May it please the Court, Your Honors. My name is James Aronis. I'm Assistant Attorney General to Edward Manabusen, the Attorney General to the Commonwealth of the Northern Mariana Islands. We are here today on behalf of the defendants' appellants, the Commonwealth of the Northern Mariana Islands, the Commonwealth Healthcare Corporation, and the Official Capacity Defendants. Really? The Official Capacity Defendants too? I thought you just... Why are they even in the case? Well, Your Honor, they're in this case because they were named by the plaintiff. I know. I'm sorry, not this... Why are they... Why are we needing to worry about them when we resolve this appeal, I guess, is what I should have asked you. Your Honor, our reading of the complaint is that the Official Capacity Defendants were also named under Commonwealth law as Official Capacity Defendants. To recover damages? Your Honor, to be honest, we're not clear from the complaint. We believe that there's a theory of damage. I believe that Count 11, if it can be called a count, required that all defendants be jointly and severally... We'll ask your opponent. Why don't you proceed with the main issue? Thank you, Your Honor. Today, we are here to defend the Commonwealth's right to self-government, and I believe that the issue that will decide the case for this panel today, or at least what I believe to be the most important issue, is whether or not the case Department of Public Safety v. Fleming requires this panel to affirm the decision of the District Court. We argue that it does not. In Department of Public Safety v. Fleming, the Ninth Circuit Court of Appeals held that the Commonwealth of the Northern Mariana Islands does not retain sovereign immunity to lawsuits on the basis of federal law brought in federal courts. The Court's decision was based on three main points. The first point was the absence of the Eleventh Amendment from the Covenant. The second point was that Title 42, Section 1983 lawsuits could not be brought against the Commonwealth were it to be granted its sovereign immunity. The third point, and the point that I believe that absolutely distinguishes Fleming, is that the Court quoted from the Mariana's Political Status Commission in its authoritative study of the Covenant, and in that quote, the Court recognized that the drafters of the Covenant and the electorate believed that the government of the Northern Mariana Islands will have sovereign immunity so that it cannot be sued on the basis of its own laws without its consent. Your Honors, we stand before you today sued on the basis of our own laws and we do not consent. We believe that in Fleming, when the Court incorporated that language, that it absolutely distinguished Fleming from today. Obviously, the two cases are very close, but were it otherwise, if the Court had intended that day to snuff out all of the Commonwealth's sovereign immunity, then it would not have taken an express declaration of sovereign immunity and used that express declaration to take away that very sovereign immunity. I don't believe there is a single case in American jurisprudence that would stand for that. Well, let me ask you this. Do you have a case in which a sovereign was found to have waived its immunity with respect to certain claims in a particular forum, but not with respect to other claims in that same forum? Because we found plenty of cases where, let's say, a state waives its immunity in its own courts, but as to all claims, and then doesn't waive its immunity as to any claims in federal court. But I haven't been able to find a case in which somebody split the baby in the way that you're advocating for here. So is there a case like that? And if not, is that a problem or maybe it's not? Your Honor, I have not been able to find a case where a state waived its sovereign immunity to some cases in federal court, but not all. I don't think we have a problem here in that the Commonwealth has not waived any of its sovereign immunity to Commonwealth law claims in federal court. And I agree that it would be unique then for the court to find that we had sovereign immunity to cases based on our own law, but that we don't have sovereign immunity to federal subject matter cases. But respectfully, the Fleming case is an outlier case to begin with. And it is my understanding that the Commonwealth of the Northern Mariana Islands is the only territory that has ever been found not to possess sovereign immunity, which is curious because the Commonwealth of the Northern Mariana Islands actually possesses attributes of sovereignty that no other territory can lay claim to, such as we control our customs territory. We have full authority to do that. Furthermore, and probably most importantly, the covenant is an agreement between two sovereigns, and the covenant cannot be altered by Congress without the express consent of the Northern Mariana Islands. I'm interested in your way of distinguishing Fleming, calling it an outrider case. I'm sure Judge Reinhardt would be interested in how it becomes an outrider case, too. But what is an outrider case, and how does it fit into what we have? I understand we distinguish cases different ways, but this is a new way of distinguishing a case. Yes, Your Honor. We labeled it as an outlier case because we couldn't find another sovereign immunity case that reached the same result as Fleming or that employed the same analysis as Fleming. These blazing new trails, but that doesn't mean it's wrong or an outliner. It may be a new issue that had never come up before. That happens every time there's a new issue that came up. I'm not sure I could sign on to an opinion that distinguished it because it's an outrider opinion, and I would hate to be on the en banc court when I did. So how do we just cast aside Fleming? That's by difficulty, I hope, your argument. I understand, Your Honor. And so one point we made in our brief, and I think the court understands it, we're not trying to make a direct attack on Fleming today. But what we are asking the court to do is if the court agrees with us that Fleming did not impliedly take into consideration this case, then we believe that if the court employs the analysis that was used in Kewana Nakoa and Polyblank and all of the other territorial immunity cases, that it will, in fact, not reach the same result that Fleming did. In Fleming, the 11th Amendment was one of the most important elements to that case, the absence of it from the covenant. But since the decision in Fleming, of course, the 11th Amendment has been determined by the United States Supreme Court to not be the source of sovereign immunity. In fact, it just stands for the repudiation of Chisholm v. Georgia. But I think even more importantly in territorial immunity, sovereign immunity cases, that the source of our sovereign immunity comes from the fact that the territory itself is the fountain of the rights upon which the plaintiff depends. And given that we create those rights, it then follows that if we did not waive our immunity, then we cannot be sued under those rights. Would that cause, would that call for us to overrule Fleming? Your Honor, I believe that if the court were to decide the case that we're asking it, the way we're asking it to, I believe it would severely undermine Fleming. I don't believe that this court has to overrule it, though, because Fleming does have that technical difference between federal subject matter jurisdiction and the supremacy of federal law versus... Why do you say it would severely undermine Fleming if we didn't extend it to this case? I was a little surprised to hear you say that. Why do you think that's true? Well, I believe it to be true because if this court reviews the covenant and searches for a waiver of our sovereign immunity, then there are only two ways it can be found. And one is through an express waiver. And having read the covenant many times, I promise it is not there. So then the second way is by such overwhelming implication that there are no other reasonable interpretations of the covenant. But we know from the Marianas Political Status Commission that, in fact, there was another reasonable interpretation. And that is that they believe that our right to self-government meant that the district court would not have the authority to instruct our government officials on how they might best comply with their own laws. Right, but that doesn't... That's, I guess... I'm sorry to quibble with you on this small point, but it seems to me you're right to point out that Fleming relied on that very statement to support its holding, that because the Commonwealth specifically called out retaining immunity from claims brought under Commonwealth law but was silent as to claims brought under federal law, and so I don't understand why you would say, especially when my colleague here has said he had some reluctance about signing on to an opinion that would do any damage in terms of trying to undermine Fleming. Why would you concede that what you want us to do is to gravely undermine the foundations of Fleming? I don't even think that's accurate, but I'm trying to figure out why did you say that? Well, I suppose, Your Honor, if the decision, if the court did not follow the same analysis of Fleming, it did not go through the 11th Amendment analysis and the 1983 analysis. For example, the 1983 issue is moot now because the Commonwealth is not a person for purposes of 1983, so that in a way, I mean, it's already been undermined, I suppose. So, I guess I believe I've misspoken because the third prong is the most important, and that is that, in fact, the framers of the Commonwealth believed we would have our sovereign immunity. I believe the court could write, could hold that that expression of sovereign immunity was more than enough to not only find a waiver but, in fact, the declaration of sovereign immunity that it is, and to that effect, then it's quite possible that the Fleming case wouldn't be. I mean, you'd like it to be severely undermined. I understand that. Most certainly, Your Honor. It's not really, you know, it's not even teed up for even for an en banc court in this case to do anything with it because there are no federal law claims in which the Commonwealth or that corporation are named, right? I mean, those are out. I believe there are, there remain some 1983 claims, but we're not challenging any of the federal law claims at this stage, so on appeal. Okay. Why don't we hear from your opponent? I mean, you have plenty of time for rebuttal, unless you have other burning points that you want us to hear. No, none that are burning, Your Honor. Okay. Thank you. We'll give you the time for rebuttal. Let's hear from the other side. May it please the court. Good morning. I'm Stephen Woodruff, counsel for appellee Gary Ramsey. The government, I mean, the appellant, confuses a lot of different issues. We well understand how the Commonwealth feels about sovereign immunity, but that's not really what is at stake in this case. Really, the Commonwealth is trying to get 11th Amendment immunity under the guise of sovereign immunity, and they're different. They're related, but they're different. And the government cites to the analysis, which, as Your Honor pointed out, the Fleming court even took into consideration in what I find. Let's just look at it together. I mean, why doesn't that statement just, why isn't that the beginning and the end of this case in a way that's unfavorable for you? Well, for two reasons. First, I think that the Fleming decision is a very well-reasoned decision, and Fleming itself bases its analysis in part on the very existence of that statement, as Your Honor pointed out. And when the district court judge considered the Commonwealth's arguments about that they should be immune in federal court for CNMI law claims where they could not assert sovereign immunity in the CNMI courts because they've very clearly waived sovereign immunity with regard to those claims, at the least in those courts. So that happens all the time, and the Supreme Court has been very clear. But that's Eleventh Amendment immunity. There's no such, well, Eleventh Amendment immunity is not a good phrase to bandy about. What we're talking about is sovereign immunity, and as your opponent pointed out, the Supreme Court has made very clear now, if it wasn't clear before, that the source of that immunity is not the Eleventh Amendment. Exactly, Your Honor. So just talk about sovereign immunity. Let's just save ourselves the tongue-twisting, because the Eleventh Amendment has nothing to do with this case. Except that that's what the Commonwealth is trying to get this court to give it, okay? If the Commonwealth has sovereign immunity or doesn't have sovereign immunity, it doesn't really make a difference in this case. And the reason for that is that the Commonwealth has waived sovereign immunity with respect to CNMI law claims. In its own courts, right. Well, actually it doesn't say that. It's just a waiver. Let's just go back. Let's go back. You have your copy of Fleming there. Why don't you just read this statement with me? Because, again, I just want to put this question to you point blank. Why doesn't this appeal begin and end with this statement? That, whatever that commission was, said that the government of the Northern Mariana Islands will have, so will retain, sovereign immunity so that it cannot be sued on the basis of its own laws without its consent. Exactly. Right. So that's what you're trying to do, and it hasn't consented. So why isn't that the beginning and the end of this case? That's my point. Not here, not in federal court. It has not. Well, that's not what the analysis says. The analysis does not say. And that's why I'm saying this issue about confusion between 11th Amendment immunity, immunity from suit in federal court, and sovereign immunity, which is immunity from suit, period. Okay. You can divide up your sovereign immunity however you want. You can parcel it out, waive it here, not waive it there. I'm not sure I agree with that, but the Commonwealth, in their statutes, if you just take the text of the statute, it waives immunity with regard to tort claims within certain limits, and it waives immunity with regard to contract claims, but the language in there suggests that contract claims can be adjudicated in Commonwealth courts. So in the Commonwealth statutes, there's actually a distinction. Now, there's a problem with that, and I addressed it in my brief, and so I don't think that even the contract claims are barred in federal court. And that particular detail hasn't been argued before the district court, but the district court said no immunity, generally. The fact that the Commonwealth, but it's very clear, I think, given the way that that statute is written, that they're consenting to jurisdiction in any court. I don't know what it says. It doesn't say we can... It's written exactly backwards, sir. What the Supreme Court has said is that a waiver of sovereign immunity has to be explicit, and it has to be explicit as to the particular court in which you are waiving immunity. So what I'm saying is that far from the Commonwealth having declared in any way, shape, or form that we are waiving our sovereign immunity for claims brought under our own law in federal court, far from ever saying that, they basically declared just the opposite, which is that we are retaining our sovereign immunity with respect to those claims. So I don't see how you could possibly win in the face of that statement that's there. That's why I keep coming back to it, and you don't have an answer, but you haven't... Okay, I understand what the point was that you were trying to make, Your Honor. And that's where Fleming comes in, actually, with regard to the explicit exclusion of the 11th Amendment. Let me ask you about Fleming then. Fleming seems to be the Fleming star here, but I'm not sure Fleming helps you. As a matter of fact, I think it hurts you. In this Fleming case, it was a 1983 case, and what our court said in Fleming is, we conclude that entering into the Covenant of Commonwealth impliedly waived whatever immunity it might otherwise have enjoined against suits in the federal court arising under federal law. That's what Fleming says. Fleming says, specifically, it limits itself to cases arising under federal law. But that isn't this case. This case, it's arriving under Commonwealth law. And so to whatever extent Fleming is important to us for our thinking, it seems to me that it does you absolutely no good because it distinguishes your case from Fleming, right? Well, that's one statement in Fleming, but there was a second statement. Well, it's a pretty good statement. It shows it's a conclusion. It's not dicted by a long shot. No, but that's the statement that includes the language that says federal claims. It's referring to federal law. Yeah, it says suits in federal court arising under federal law. Suits in federal court arising under federal law. But then later on in the opinion, the court then went and said that the exclusion of the 11th Amendment meant that the Commonwealth intended to waive any immunity in federal cases that they might otherwise enjoy. Sure, that's right. But that has nothing to do with your case. Well, they're talking about a case, and that's what we have. We have a federal case. We have a 1983 action against a number of defendants, and we have a number of Commonwealth law claims that invoke the supplemental jurisdiction of the district court. And those claims are all bound up with the federal claims. And the Commonwealth law claims are included just in order to help the plaintiff to accomplish a complete remedy. So it is a federal case. Our basis for jurisdiction is federal question. And these claims are all they're not separate claims. They all arise out of the same transactions and occurrences that are involved in the 1983 claims. And basically, that's what Fleming says. Federal cases, waiving these cases. When it says arising under federal law, then there's no problem with the covenant. But the issue here is arising under state law. But it doesn't arise under state law independent of the federal claims. It's within the context of the federal case. And it's under the supplemental jurisdiction of the court, and not merely because the parties are different, but because it arises out of the same transactions and occurrences that give rise to the 1983 claims. That's not the way it works. I mean, the claims that we're talking about in this appeal don't arise under federal law. The source of the law that you – I mean, these are your claims. I don't even know why we're discussing this. You've alleged them under CMI law. That's the source of the law that they're based on. They have nothing – you're right that they – But that's not what the second part of Fleming said. It didn't say arising under federal law. The second – that second statement in Fleming, which I was – I think I know what you're talking about, but it's not – I think you're just misreading the case. The quote that Judge Wallace read to you is the holding of the case. There was no reason for the court in Fleming to opine about claims brought under CMI law because they weren't at issue there. Well, I mean, I agree with the district judge. No, no. Magistrate judge. Well, the magistrate judge was basing herself principally on the previous judge – previous decision in the Christian case by the district judge. And there are no significant differences between the magistrate judge's decision and – How did it get in there? Did you stipulate before magistrate judge? Yes, judge – the district judge recused herself because one of the defendants is a relative, and the parties agreed to allow the case to be heard by the magistrate judge. I was curious, in a case this important, usually the district judge would hold onto it, but she had a conflict. That's correct, Your Honor. And rather than ask for this court to appoint someone else, then – If I may, I'll just read what – from the decision by the judge in this case. It said, defendants argue that Fleming's finding that Commonwealth waived immunity can be restricted to claims based on federal law rather than state law. Yet such a reading would ignore Fleming's rationale that, quote, when the drafters of the Covenant rejected the protections of the 11th Amendment, they must have also intended to forego any sovereign immunity from suit in federal court that the Commonwealth might otherwise enjoy. And then she went on. She said, in other words, if the Covenant drafters intended to waive the Commonwealth's immunity only to lawsuits based on federal law, then their decision to exclude the entire 11th Amendment, which includes immunity to suits based on both state and federal law, was illogical. And I think that that's correct. And I think that that's why Fleming does include CNMI law claims. Let me ask you another question. Going back in history, sometimes we get sort of trails. We have a fetish about, you know, finding prior law and hang our hats on it. It seemed the way we do our work. The Supreme Court took up a case for Hawaii when Hawaii was a territory. And they came out in opposition to the way the magistrate judge ruled in this case. In Puerto Rico, the Supreme Court looked at this case there. It came out opposite to the way the magistrate judge here. And then when the Guam one came up, we, our court, came out differently from where the magistrate judge. There seems to be sort of a history. And we talked about outriders earlier. It seems this is kind of an outrider, that it's different from the way we've treated them in the past. Should that concern us as a court? Well, it could, except that if you look closely at those decisions, Your Honor, they're all actually, and the Fleming case, are all actually applying essentially the same analysis. The Hawaii case, the Puerto Rico case, the Guam case, all actually were based on the organic acts that were involved in those cases. So then we get back to the question my colleague asked you about what the organic acts said here, which was based upon an important study that took place when the Northern Marianas came in. And it was very carefully done over a lot of work. And they seem to say there that they're a little bit in opposition to what you're suggesting here, and more consistent, it would seem to me, at least the argument can be made, more consistent the way the Supreme Court and our court have treated this issue before. Should that concern us? Why would we say, no, NMI is different? Well, I'm not sure I completely understand, but are we referring to the analysis here and the issue about the understanding of the negotiators of the covenant was that the CNMI would have sovereign immunity? Because I don't see that as actually a problem in this case. We don't really have to say that the CNMI doesn't have sovereign immunity. We can recognize the validity and the force and the effect of the Commonwealth statutes that state what the government is liable for and the limits of liability and the kinds of things that they're liable for in their own courts at the very least. And all we're saying is that in the context of negotiating the covenant, the parties to those negotiations recognized that whatever the Commonwealth did with its sovereign immunity, it wasn't going to separate federal court from local courts with regard to that immunity. And that's even reinforced by the entire history of the CNMI judiciary. There have been a number of cases in this court with regard to that. But that history involved the federal court at the very beginning, immediately after the creation of the Commonwealth, in hearing Commonwealth law claims. And those Commonwealth law claims only went to local courts as the local judiciary was established. And the district court maintained appellate jurisdiction over the Commonwealth trial court for a period of time. Now, ultimately, we have a very well-established Commonwealth Supreme Court, which, in the Kabir case, very carefully avoided going head-on on this question about federal jurisdiction. So what we have here, Your Honor, is not a matter of failure to respect the fundamental rights of self-government and the function of the government that was recognized based on the acts of Congress with respect to Hawaii and Guam and Puerto Rico. We just have the fact that, with respect to the Commonwealth, it was understood and agreed by the parties that the federal court would have the full range of jurisdiction. And that's why I see a distinction between 11th Amendment and sovereign immunity here. And that's why I say that what the government, CNMI government, is trying to do here to push out the Commonwealth law claims while the other claims are still there, is trying to claim 11th Amendment immunity, which they don't have. Okay. Counsel, you're well over your time. I'm going to ask you to sit down. We'll hear from your opponent for his remaining time. Appreciate your arguments. Thank you very much. Thank you, Your Honors. I would just like to make two points in rebuttal. The first, my opponent has brought up the issue. I wish one of your points would be to tell us what you think our last paragraph should be, our last line or two should be in this case. Your Honors, that the people Go ahead with what you want to argue first. Okay. Yes, Your Honor. I would like to say to the statutory waiver issue that my opponent hasn't been able to provide any statutory waiver of subject of our immunity in federal courts. If such language existed, it would have been cited in his brief. It does not exist. There is no waiver. Moreover, if there were language that could be construed as a waiver, that issue hasn't yet been addressed by the district court. So if my opponent can find that language, then if this case were sent back, then the district court could look for a statutory waiver. The question before the court today is whether or not the covenant waives our sovereign immunity here. The second point I would like to make, I heard my opponent mention the full range of jurisdiction for the federal district court. The covenant, I believe in Section 402B, limits the jurisdiction of the federal district court to that of any other federal district court in the United States of America. And in no other federal district court in the United States of America could a sovereign be hailed into that federal court and asked to answer under its own laws. And third, Your Honors, what I would ask maybe in the final paragraph is a recognition that the people of the Northern Mariana Islands for hundreds of years endured political oppression. And by entering into the covenant with the United States of America, they were guaranteed their right to self-government. And that is what we are here for today. And we ask that the court recognize that our right to self-government includes our right to decide our own issues in our own courts and to manage our own internal affairs. Your Honors, if there are no further questions, thank you so much for your time. I've been fascinated by your report and your colleagues. I've enjoyed this discussion. You're very well prepared. And it's a very difficult question, but I feel much more comfortable about it after hearing your arguments. Thank you for your preparation, both of you. Thank you so much, Your Honor. Great. Thanks very much. The case just argued will stand submitted.
judges: Wallace, Farris, Watford